## *2020-53679 / Court: 215*

**Case No. _____**

| | | |
|---|---|---|
| **ENRIQUE COURTNEY HUBER,** | § | **IN THE DISTRICT COURT** |
| *PLAINTIFF,* | § | |
| | § | |
| **V.** | § | |
| **GALVESTON COUNTY, HENRY** | § | |
| **TROCHESSET, OFFICER TRAN,** | § | **_____JUDICIAL DISTRICT** |
| **BOON-CHAPMAN BENEFIT** | § | |
| **ADMINISTRATORS, INC.,** | § | |
| **SOLUTA, INC., CORRECTIONS** | § | |
| **CORPORATIONS OF AMERICA,** | § | **HARRIS COUNTY, TEXAS** |
| **CORECIVIC, INC., CORECIVIC,** | § | |
| **AND NURSE PITTMAN** | § | |
| *DEFENDANTS.* | § | |

### PLAINTIFFS ORIGINAL PETITION

Plaintiff, Enrique Courtney Huber ("Plaintiff" or "Mr. Huber") files this original petition against Defendants Galveston County, Sheriff Henry Trochesset ("Trochesset"), Officer Tran ("Tran"), Boon-Chapman Benefit Administrators, Inc. ("Boon-Chapman"), Soluta, Inc., ("Soluta, Health Inc.") Corrections Corporations of America ("CCA" or "CoreCivic"), CoreCivic, Inc., CoreCivic of Tennessee, LLC (collectively, "Defendants"), and in support thereof show as follows,

### INTRODUCTION

1. This is an action brought by Mr. Huber against Defendants for Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 for claims of conditions of confinement, delay or denial of medical care, failure to train or supervise, illegal detention, and excessive force.

1

EXHIBIT C

2. On June 10, 2018, Enrique Courtney Huber drove to Kemah, Texas, to meet a friend. Mr. Huber made it to Kemah before his friend.

3. Courtney Huber traveled to the United States on an I-94 visa, which was current. He has a history of legal entries to the United States dated back to 1971. His tourist visa and passport were also unexpired and never revoked or suspended. He was legally entitled to enter and stay in the United States at all times relevant to this action.

4. While he waited for his friend's arrival, Mr. Huber decided to have a social/business meeting.

5. After meeting at a local business, Mr. Huber exited the business and walked to where he parked his car.

6. Before he could reach his car, Mr. Huber was approached by local police officers who immediately began to question why he was in the area.

7. Mr. Huber informed the police officers that he parked nearby and was walking to his car.

8. He provided his passport, visa, and car keys to the police officers.

9. Mr. Huber, who has bipolar disorder, told the police officers that he requires his medication. Officers ignored his warning.

10. After being ignored, Mr. Huber grew increasingly nervous.

11. The officers, without reason, detained and arrested Mr. Huber.

12.     Mr. Huber was transported to a local Kemah jail. After several hours passed, he was transferred to Galveston County Jail.

## II. DISCOVERY CONTROL PLAN

13.     Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under a Level 2 discovery plan.

## III. PARTIES

14.     Plaintiff, Enrique Courtney Huber, was legally within the United States at all times relevant to this suit.

15.     Defendant, Galveston County is a municipality in Texas. Galveston County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, acted under the color of law. Galveston County may be served with citation through the Galveston County Judge or wherever he may be found.

16.     Defendant, Henry Trochesset is an individual who may be served with citation at his place of employment located at 601 54th street, Galveston, Texas 77551, or wherever he may be found. Sheriff Trochesset is being sued in his individual capacity and at all times relevant to this case acted under the color of law.

17.     Defendant, Officer Tran is an individual who may be served with citation at his place of employment located at 601 54th street, Galveston, Texas 77551, or wherever he may be found. Officer Tran is being sued in his individual capacity and at all times relevant to this case acted under the color of law.

3

18.   Defendant, Boon-Chapman Benefit Administrators, Inc. is a corporation that may be served with citation through its registered agent Kevin Chapman at 9401 Amberglen Blvd., Ste. 100 Austin, TX 78729, or wherever he may be found. Boon-Chapman Benefit Administrators, Inc. is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law.

19.   Defendant, Soluta Inc., is a corporation that may be served with c9401 Amberglen Blvd., Ste. 100itation through its registered agent Kevin Chapman at Austin, TX 78729, or wherever he may be found. Soluta Inc. is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law.

20.   Defendant, Corrections Corporation of America is a corporation, a state actor,  a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. It may be served with citation through its registered agent CT corporation system at 811 Dallas Avenue, Houston, TX 77002, or wherever they may be found.

21.   Defendant, CoreCivic, Inc is a corporation, a state actor,  a "person" under 42 U.S.C§1983 and at all times relevant to this case acted under color of law. It may be served with citation through its registered agent CT corporation system at 1999 Bryan St., Ste., 900 Dallas, TX 75201, or wherever they may be found.

22.   Defendant, CoreCivic of Tennessee, LLC is a corporation, a state actor,  a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. It may be served with citation through its registered agent CT corporation system at

1999 Bryan St., Ste., 900 Dallas, TX 75201, or wherever it may be found.

23.     Defendant, Nurse Pittman, a state actor,  a "person" under 42 U.S.C.§1983 and at all times relevant to this case, acted under the color of law she may be served with citation wherever she may be found.

## IV. JURISDICTION AND VENUE

24.     Jurisdiction is proper in this Court because the damages sought by Plaintiff exceed this Court's minimal jurisdictional limits. The parties to this lawsuit are all subject to jurisdiction in the State of Texas. *See* Tex. R. Civ. P. 47(b). This Court has jurisdiction over Defendants because they are citizens of the State of Texas, and they engaged in a concerted wrongful activity that is the subject of this lawsuit.

25.     Plaintiff seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees, plus all other relief to which Plaintiff deems himself entitled. *See* Tex. R. Civ. P. 47(c), (d).

26.     Venue is proper in Harris County, Texas, because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Harris County. *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

## V. ADDITIONAL FACTS

27.     On June 10, 2018, Enrique Courtney Huber was transferred from a local Kemah, Texas jail to the Galveston, Texas county jail, with his personal property.

28.     Mr. Huber never committed a crime, nor was he suspected of committing a crime.

29. Upon arrival at the Galveston County Jail, Mr. Huber told the jail and/or medical staff that he had bipolar disorder and in need of his medication.

30. He was ignored and placed in a holding cell with several other inmates.

31. Due to his arrest and missed doses of medication, Mr. Huber was in a bipolar state.

32. The following day Mr. Huber was brought before a Judge.

33. Mr. Huber hoped he would be released to get the proper medical attention. Instead, Mr. Huber returned to the general population of the jail.

34. Mr. Huber's bipolar disorder continued. He received no medical attention from the Galveston County jail medical staff.

35. Boon-Chapman and Soluta Health are contracted by Galveston County to provide medical services to Galveston County Jail.

36. After Mr. Huber returned to jail, he again informed the jailers that he was off his medication and was having thoughts of suicide.

37. Instead of receiving the necessary medical attention from the Galveston County jail medical staff for his bipolar disorder, Mr. Huber was placed in punitive solitary confinement.

38. While in solitary confinement, Mr. Huber was subjected to the most heinous conditions.

39. Mr. Huber was forced to strip naked and placed in a cold cell with no windows.

40. The cell contained no sink, toilet, or bed.

41.   The cell lights were on 24 hours per day each day, making it impossible for Mr. Huber to sleep.

42.   Mr. Huber was not allowed to leave the cell.

43.   Mr. Huber was required to use a small hole in the middle of the cell on the floor to urinate, vomit, and defecate.

44.   Galveston County did not provide Mr. Huber with any toilet paper, nor was he allowed to shower or use a toilet.

45.   There is no sink, no toilet, no shower, or phone in the punitive solitary cell.

46.   After Mr. Huber suffered for days in solitary confinement, he was released from solitary confinement and placed in another cell block.

47.   While in the new cell block, Mr. Huber was concerned for his health and safety.

48.   He received death threats from fellow inmates.

49.   Knowing that Mr. Huber was in a medical crisis, Galveston county jailers, including Tran, tormented him and left him to fend for himself.

50.   The jailers, including Tran, passed by Mr. Huber's cell, teased him and ignored Mr. Huber as he asked for help.

51.   Mr. Huber suffered from another bipolar episode while in his new cell.

52.   An unknown amount of jailers entered Mr. Huber's cell.

53.   Mr. Huber was forced from his cell by jailers in full riot gear.

Unofficial Copy Office of Marilyn Burgess District Clerk

54. Tran was the first jailer in the cell. He was armed with a hand-held rigid plastic riot shield that he used to slam Mr. Huber to the concrete floor.

55. Mr. Huber injured his shoulder and head due to his body's combined impact hitting the shield and force of being slammed to the floor by Tran and several other jailers.

56. Tran handcuffed Mr. Huber and slammed Mr. Huber's already injured head to the concrete floor.

57. Mr. Huber was handcuffed and not a threat to jailers, inmates, or himself.

58. Mr. Huber yelled out in pain as the officers, including Tran, continued to pin his head and body to the floor.

59. During Mr. Huber's ordeal, he informed Tran that the blows had hurt him to the head. Officer Tran exclaimed that he knew.

60. Mr. Huber was sent back to solitary confinement for a second time. He received no medical treatment for his bipolar disorder, mental illness, injured shoulder and head.

61. The cell Mr. Huber was placed in had no sink, toilet, or bed. He was only allowed to shower once during the several days spent in solitary confinement for a second time.

62. On June 23, Mr. Huber went to another court hearing. During his hearing, the judge informed him that he would be released with time served.

63. The Judge conditioned Mr. Huber's release on the terms that he Galveston County to destroy any evidence related to his case.

64. After the hearing, Mr. Huber was taken to a different jail cell. Mr. Huber was again attacked.

65. Mr. Huber was struck in his face by officer Tran with a blunt object. The force of the strike knocked Mr. Huber unconscious.

66. Mr. Huber posed no threat to jail staff, himself, any other inmates, or persons.

67. Mr. Huber did not receive any medical attention from the Galveston County medical staff after being knocked unconscious.

68. When Mr. Huber regained consciousness, he was in the back of a van with his hands and feet shackled. He was unaware of where he was or where he was being taken.

69. He was in excruciating pain. He had radiating pain from his head, jaw, and face.

70. Mr. Huber had memory loss due to the force of being knocked unconscious.

71. He also temporarily lost the ability to speak and developed swelling throughout his head.

72. Instead of being taken to the hospital, he was dropped off at CCA.

73. CCA is a private entity that engages in operation of a detention center as a performance of a governmental function.

74. When he arrived at CCA, he went through the medical intake process.

75. After his intake evaluation by CCA medical, he was rushed to a Herman Memorial hospital for treatment.

76.     Hermann Memorial found out that he had a dislocated jaw, memory loss, and had visual impairment.

77.     He could not remember his name or other personal information about himself, such as his children and girlfriend.

78.     After returning to detention at CCA, he was not allowed on a top bunk.

79.     He was placed on a mechanical diet but was not given his psychotropic medications for his Bipolar disorder.

80.     Galveston County jail intentionally and maliciously withheld Courtney Huber's travel and identifying documents that caused Mr. Huber to be illegally held, resulting in further damages to Mr. Huber.

*Corrections Corporation of America ("CCA" or 'CoreCivic")*

81.     Huber arrived at a Corrections Corporation of America facility in Houston, Texas ("CCA" or "CoreCivic"). He went through medical intake at CCA.

82.     Mr. Huber's illegal detention in CCA would last over three months.

83.     Due to his injuries, for six months, doctors placed Mr. Huber on a mechanical diet

84.     Mr. Huber also was required to use a lower bottom bunk.

85.     While in custody at CCA, Mr. Huber's memory slowly returned.

86.     He began to write down the things he could remember.

87.     The medical staff at CCA refused to treat Mr. Huber's mental illness.

88.     After over 17 days in custody, Mr. Huber had his first court date.

89. During Mr. Huber's immigration hearing, Mr. Huber correctly informed the courts that he was legally in the United States.

90. He informed the court that he had a visa, passport, and I-94. However, the ICE agents alleged that they did not have his records from Galveston County.

91. The illegal detention continued.

92. At all times relevant to Mr. Huber's illegal detention by CCA, he had a valid visa, I94, and passport.

93. Galveston County intentionally and maliciously withheld Mr. Huber's physical documents upon his transfer to CCA.

94. After weeks in the Houston CCA facility, Mr. Huber was transferred to the Polk IAH adult detention facility.

95. During intake at the Polk facility, Mr. Huber informed the jailers and medical staff about his mental illness and his allergies.

96. To make matters worse, Mr. Huber experienced an allergic reaction in the custody of CCA. The medical staff, and nurse Pittman treated Mr. Huber's allergic reaction with a medication that Mr. Huber is also allergic to.

97. The medical staff was aware of Mr. Huber's mental illness and allergies but ignored them.

98. On September 6, Mr. Huber attended another court hearing where he accepted a voluntary departure. He was released from detention.

## VI. CAUSES OF ACTION

**42 U.S.C. § 1983 Fourteenth Amendment Due Process and Fourth Amendment Violations**

99.   Plaintiff incorporates by reference all paragraphs contained herein.

100.   This suit is brought pursuant to 42 U.S.C. § 1983, which is entitled the Civil Rights Act. The critical language of the Civil Rights Act sets forth, in part:

101.   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Fourteenth and Fourth Amendments: Due Process, Unlawful Search, Seizure, and Detention.

102.   Defendants acted under the color of law when it delayed and denied Mr. Huber's medical care with deliberate indifference to his rights.

103.   Defendants failed to assess inmates' medical conditions, failed to monitor an inmate with serious medical conditions, and failed to train jailers to evaluate inmates' medical needs.

104.   Mr. Huber did not receive adequate medical care and treatment for his bipolar disorder.

105.   Huber did not receive adequate medical care for his injuries sustained when jailers

assaulted him due to the policies, practices, and customs of Galveston County and Sheriff Trochesset.

106. Mr. Huber's injuries included a dislocated jaw and injuries to his head and shoulder.

107. As a direct result of the Defendants' deliberate indifference and reckless acts or omissions, Defendants injured Mr. Huber.

**Excessive Force**

108. Defendants are liable to Mr. Huber for violating his Fourth Amendment Constitutional right to be free from excessive force, pursuant to 42 U.S.C. § 1983. Tran's excessive force against Mr. Huber included, without limitation, slamming him to the ground with a hard plastic riot shield, striking him in the head and/ or face with a blunt object banging his head to the concrete floor.

109. Defendants violated Mr. Huber's clearly established constitutional rights, and his conduct was objectively unreasonable in light of clearly established law at the time of the relevant incident as state actor while acting under the color of law.

110. Mr. Huber was injured as a result of the Defendants' deliberate indifference and reckless wrongful acts or omissions.

*Sheriff Trochesset's Liability*

111. Plaintiff incorporates by reference all paragraphs contained herein.

112. Henry Trochesset is the policymaker for Galveston County and is responsible for

its inmates' custody and care.

113.   Henry Trochesset is being sued in his individual capacity.

114.   Henry Trochesset was aware there would be inmates, like Mr. Huber, who had pre-existing conditions requiring medication, supervision, and additional medical care. Henry Trochesset was personally involved in Mr. Huber's constitutional deprivation because he was responsible for the inmates' medical care, namely, their health, safety, and welfare.

**Monell Claims**

115.   Plaintiff incorporates by reference all paragraphs contained herein.

116.   Galveston County had a duty to provide medical care to the inmates, and this duty was non-delegable.

117.   Defendants violated Mr. Huber's constitutional rights by ignoring and failing to treat Mr. Huber for his known mental illnesses and injuries sustained due to the use of excessive force.

118.   Galveston County violated Mr. Huber's right to be free from the use of excessive force because it promoted, adopted, and promulgated a policy or custom of allowing it's detention officers, including Tran, to utilize excessive force based on the inadequate training and supervision of his officers.

119.   Galveston County, Trochesset, and Tran deliberately or recklessly violated Mr. Huber's civil rights under the color of law through excessive force against him. Tran's

excessive force against Mr. Huber included, without limitation, slamming him to the ground with a hard plastic riot shield, striking him in the head and/ or face with a blunt object slamming his head to the concrete floor.

120.    Mr. Huber was injured as a result of the Defendants' deliberate indifference and reckless wrongful acts or omissions.

121.    Defendants violated Mr. Huber's clearly established constitutional rights. Their conduct was objectively unreasonable in light of clearly established law at the time of the relevant incident as state actor while acting under the color of law.

**Condition of Confinement**

122.    Plaintiff incorporates by reference all paragraphs contained herein.

123.    Defendants CCA, Galveston County, Soluta Health, and Boon-Chapman's inadequate record-keeping, intake procedures, and monitoring of inmates in similarly situated positions as Mr. Huber caused Mr. Huber to go days without medication or treatment for his bipolar disorder.

124.    Instead of being treated for his bipolar disorder and potential suicidal ideologies, Mr. Huber spent several days in solitary confinement.

125.    While in solitary confinement in Galveston jail, jailers demanded Mr. Huber strip naked.

126.    Galveston County Jail solitary confinement cell contained no bed and no toilet.

127.    The freezing cell only contained a hole in the ground for inmates such as Mr.

Huber to use as a bathroom.

128. Mr. Huber was not allowed to take a shower while in Galveston.

129. The light stayed on day and night, which prevented Mr. Huber from sleeping, a documented torture method.

130. Mr. Huber never received any toilet paper, nor did any medical professional assess Mr. Huber's condition.

131. Mr. Huber was subjected to the use of excessive force when officers slammed his body to the floor and later knocked him unconscious.

**Inadequate Medical Care**

132. Plaintiff incorporates by reference all paragraphs contained herein.

133. Defendants were deliberately indifferent to Mr. Hubers' serious medical needs and denied adequate medical care to Mr. Huber.

134. Defendants never provided medication to Mr. Huber for his bipolar disorder nor treated him while he was in a suicidal state, despite actual knowledge of his medical condition based on Mr. Huber's statements.

135. Huber was assaulted several times by Galveston County jailers. Mr. Huber injured his head and shoulder when jailers, including Tran, slammed his body to the floor. Tran handcuffed Mr. Huber and, without justification, slammed Mr. Huber's head into the floor.

136. Mr. Huber was also hit in the face with a blunt object by Tran. The force of the

blow knocked him unconscious and caused memory loss.

137. Mr. Huber never received medical treatment for his injuries received in both assaults.

138. Defendants were deliberately indifferent to Mr. Hubers' serious medical needs and delayed his access to adequate medical care.

139. Defendants witnessed Mr. Huber's bipolar episodes. Instead of providing medical care, the defendants placed him in solitary confinement.

140. Mr. Huber has suffered from severe trauma and mental distress due to the Defendants's delay in medical care.

**Inadequate Medical Care against CCA**

141. Plaintiff incorporates by reference all paragraphs contained herein.

142. Defendants were deliberately indifferent to Mr. Hubers' serious medical needs and denied and delayed adequate medical care to Mr. Huber.

143. Although Defendants CCA and Nurse Pittman were aware of Mr. Huber's allergies, they provided him with medication that he was allergic to.

144. Mr. Huber suffered severe allergic reactions.

145. Mr. Huber has suffered injuries due to the Defendants' deliberate indifference to Mr. Hubers' serious medical needs.

**Failure to Train or Supervise**

146. Plaintiff incorporates by reference all paragraphs contained herein.

147. Defendants, Sheriff Trochesst and Galveston County, and CCA failed to train or supervise Galveston County Jail and medical staff responsible for Mr. Huber's care.

148. Defendants allowed jail staff, including Tran, to use excessive force to detain inmates who suffered from mental illnesses such as Mr. Huber. The use of a riot shield injured Mr. Huber, his head slammed into the floor, and was hit by a blunt object.

149. Defendants did not verify whether appropriate procedures were administered or whether the policies were followed by jail staff.

150. Defendants did not enforce any disciplinary procedures for jail staff that failed to administer or follow written policies and procedures

151. When Mr. Huber was in Defendants' custody, it was clearly established that the failure to provide adequate medical care, condition of confinement, and the use of excessive force were unconstitutional and a violation of Mr. Huber's constitutional rights under the Fourth and Fourteenth Amendments.

152. Mr. Huber had bipolar disorder, mental distress, and physical pain by The Defendants' failure to properly supervise its medical and jail staff.

153. Defendants failed to train the jail staff and nurses that were responsible for the care of Mr. Huber.

154. Mr. Huber had a severe mental illness and was injured on several occasions while in the custody of Galveston County jail and CCA.

155. Mr. Huber never received medical treatment for his mental illness and other

injuries due to the Defendants' lack of training and supervision.

156.    Defendants failed to train the intake staff to properly screen and administer medication to Mr. Huber as he had a known medical condition.

157.    Defendants failed to train the jailers to monitor and care for inmates with medical conditions. Defendants allowed untrained personnel without proper medical credentials and training to monitor inmates with known medical issues.

158.    Defendants failed to adequately train jail and medical staff on properly recognizing inmates with serious mental conditions and at risk of injury.

*Illegal Detention*

159.    Plaintiff incorporates by reference all paragraphs contained herein.

160.    Courtney Huber was illegally seized and detained in the custody of the Corrections Corporation of America ("CCA" or "CoreCivic").

161.    Mr. Huber was transferred to CCA from Galveston County jail on June 23. 2018, even though he traveled to the United States with valid documentation.

162.    After spending 17 days in the custody of CCA, Mr. Huber had his first hearing.

163.    He informed the judge that he was a tourist on a valid visa and had valid entries into the United States dated back to 1971. However, this information was ignored, and Mr. Huber was sent back into CCA custody.

164.    Mr. Huber's next hearing was on September 6. Mr. Huber again informed the Judge about his travel documents. Mr. Huber provided the courts with his valid I94.

However, The Judge gave the ICE immigration officers two additional days to locate Mr. Huber's immigration files.

165.    After two days, ICE was unable to locate Mr. Huber's file, so They offered Mr. Huber an option for voluntary departure.

166.    CCA illegally detained Mr. Huber for over three months despite their knowledge of his travel documents.

*Negligence*

167.    Plaintiff incorporates by reference all paragraphs contained herein.

168.    In the alternative to the constitutional claims, Plaintiff brings claims for negligence against Defendant Galveston County, in the event, Tran alleges his actions were not intentional, and claims should be brought against the County instead of Tran.

169.    Defendants had a duty of reasonable care to protect Courtney Huber from harm or potential harm while Mr. Huber was in their care and custody.

170.    Mr. Huber suffered physical injuries when officer Tran and other jailers entered the cell of Mr. Huber. Tran negligently used a hard plastic riot shield to shove Mr. Huber to the floor, severely injuring his head, shoulder, and body.

171.    Mr. Huber also suffered a dislocated jaw when Galveston County jailers negligently struck him with a blunt object.

172.    The negligent use of county tangible property, namely a riot shield and blunt object used by Tran, caused Mr. Huber's injuries.

173.   In the alternative to the constitutional claims, Plaintiff asserts medical negligence claims against Defendants CCA and Nurse Pittman for the negligent medical treatment provided to the Plaintiff.

## VII. DAMAGES

174.   Plaintiff seeks all damages allowed by law as a result of the aforementioned forming the basis for each of his causes of action. Plaintiff requests damages within the jurisdictional limits of the Court, including:

a. Physical pain and mental anguish;
b. Loss of earning capacity and lost wages;
c. Disfigurement;
d. Physical impairment;
e. Medical care expenses;
f. Out-of-pocket economic losses;
g. Other expenses related to the arrest and/or prosecution of Enrique Huber; and
h. Exemplary/punitive damages.
i. Plaintiff's reasonable and necessary attorneys' fees;
j. Costs of court;
k. Pre-judgment and post-judgment interest at the highest rates allowable by law; and
l. For such other and further relief, both general and special, at law and in equity, the Plaintiff may show himself entitled.

175.   The damages sustained by the Plaintiff were proximately caused by the Defendants as set forth herein.

176.   Plaintiff respectfully requests the Court and jury to determine the amount of the loss Plaintiff has incurred in the past and will incur in the future.

177.   There are certain elements of damages provided by law that Plaintiff is entitled to

have the jury in this case separately consider determining the sum of money for each element that will fairly and reasonably compensate Plaintiff.

## VIII. ATTORNEYS FEES

178.    After prevailing herein, Plaintiff is entitled to recover reasonable and necessary attorney fees and costs to enforce his constitutional rights under 42 U.S.C. § 1983 and 1988 from Defendants.

## IX. REQUEST FOR DISCLOSURE

179.    Under Texas Rule of Civil Procedure 194.2, Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in all of Texas Rule of Civil Procedure 194.2 (a)-(1).

## X. JURY DEMAND

180.    Pursuant to Texas Rule of Civil Procedure 216, Plaintiff respectfully requests and demands a trial by jury.

## XI. PRAYER

181.    Plaintiff prays that he has a judgment against Defendants for actual damages shown and proven at trial, for prejudgment, post-judgment interest, for costs of court, and for all other relief, legal and equitable, to which he is entitled.


Respectfully submitted,
By: /s/ U.A. Lewis
U.A. Lewis
Texas Bar No. 24076511
The Lewis Law Group

P.O. Box 27353
Houston, TX 77227
T: (713) 570-6555
F: (713) 581-1017
myattorneyatlaw@gmail.com
Lead Attorney for Plaintiff

By: /s/ Okwudili Onyekwelu
Okwudili Onyekwelu
Texas Bar No. 24110867
The Lewis Law Group
P.O. Box 27353
Houston, TX 77227
T: (713) 570-6555
F: (713) 581-1017
oonyekwelu@thelewislaw.com
Attorney for Plaintiff

By: /s/ Damion Millington
Damion Millington
State Bar No. 24111178
The Lewis Law Group
P.O. Box 27353
Houston, TX 77227
T: (713) 570-6555
F: (713) 581-1017
dmillington@thelewislaw.com
Attorney for Plaintiff

## CAUSE NO. 2020-53679

| | | |
|---|---|---|
| ENRIQUE COURTNEY HUBER, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | 215ᵀᴴ JUDICIAL DISTRICT |
| | § | |
| GALVESTON COUNTY, HENRY | § | |
| TROCHESSET, OFFICER TRAN, BOON- | § | |
| CHAPMAN BENEFIT ADMINISTRATORS, | § | |
| INC., SOLUTA, INC., CORRECTIONS | § | |
| CORPORATIONS OF AMERICA, | § | |
| CORECIVIC, INC., CORECIVIC, AND | § | |
| NURSE PITTMAN, | § | |
| | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

### DEFENDANTS' ORIGINAL ANSWER, JURY DEMAND AND REQUEST FOR DISCLOSURE

COMES NOW, Defendants **BOON-CHAPMAN BENEFIT ADMINISTRATORS,** and **INC., SOLUTA, INC.**, (hereinafter "Healthcare Defendants") and file this Original Answer to Plaintiff's Original Petition, and would show the following:

### I.
### GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Healthcare Defendants generally deny each and every, all and singular, allegations contained within Plaintiff's Original Petition, and demand strict proof thereon by a preponderance of the credible evidence in accordance with the Constitution and laws of the State of Texas.

### II.
### JURY DEMAND

In accordance with Texas Rule of Civil Procedure 216, Healthcare Defendants demand a trial by jury.

---

### III.
### REQUEST FOR DISCLOSURE

Pursuant to Texas Rule of Civil Procedure 194, Healthcare Defendants request that Plaintiff provides the information required in the Request for Disclosure.

### IV.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants **BOON-CHAPMAN BENEFIT ADMINISTRATORS, INC.** and **SOLUTA, INC.**, pray that Plaintiff recovers nothing of and from Defendants and that Defendants receive all costs of Court and for such further relief, both at law and in equity, to which Defendants **BOON-CHAPMAN BENEFIT ADMINISTRATORS, INC.** and **SOLUTA, INC.**, may be justly entitled.

Respectfully submitted,

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**

By */s/ Christopher G. Rigler*
    Christopher G. Rigler
    State Bar No. 24091028
    crigler@thompsoncoe.com

Plaza of the Americas
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832
(214) 871-8200 (Telephone)
(214) 871-8209 (Facsimile)

-and-

Zandra Foley
State Bar No. 24032085
zfoley@thompsoncoe.com
Cory S. Reed
State Bar No. 24076640
creed@thompsoncoe.com
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
One Riverway, Suite 1400
Houston, Texas 77056
(713) 403-8200 (Telephone)
(713) 403-8299 (Facsimile)

**ATTORNEYS FOR DEFENDANTS
BOON-CHAPMAN BENEFIT
ADMINISTRATORS, INC., SOLUTA, INC.**

## CERTIFICATE OF SERVICE

This is to certify that on this 20TH day of November, 2020, a true and correct copy of the foregoing was delivered to the following counsel of record by E-Service, Certified Mail/Return Receipt Requested and/or Facsimile:

U.A. Lewis
State Bar No. 24076511
Lead Attorney
myattorney@thelewislaw.com
Okwudili Onyekwelu
State Bar No. 24110867
oonyekwelu@thelewislaw.com
Damion Millington
State Bar No. 24111178
dmillington@thelewislaw.com
**THE LEWIS LAW GROUP PLLC**
P.O. Box 27353
Houston, Texas 77227
(713) 570-6555 (Telephone)
(713) 581-1017 (Facsimile)
**COUNSEL FOR PLAINTIFF**

*/s/ Christopher G. Rigler*
Zandra Foley
Christopher G. Rigler
Corey Reed